**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1722-24

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JONATHAN BALBUENA,
a/k/a JONATHAN
BALBUENA-FRANCO,

     Defendant-Appellant.

_____

Submitted April 15, 2026 – Decided July 13, 2026

Before Judges Vanek and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment Nos. 24-02-0310, 24-05-0871, and 24-06-1033.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Michael Denny, Assistant Deputy Public Defender, of counsel and on the brief).

Bradley D. Billhimer, Ocean County Prosecutor, attorney for respondent (Samuel Marzarella, Chief Appellate Attorney, of counsel; Cheryl L. Hammel, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Jonathan Balbuena appeals from an October 25, 2024 order denying has application for admission into the pretrial intervention program (PTI). We affirm.

I.

In February 2024, an Ocean County grand jury returned Indictment No. 24-02-0310, charging defendant with third-degree possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10(a)(1). The charge stemmed from a June 2023 traffic stop, when a police officer observed defendant driving a vehicle with expired license plates. After making the stop, the officer learned defendant had an outstanding arrest warrant. A search incident to arrest resulted in discovery of suspected methamphetamine.

Another indictment, No. 24-05-0871, arose from a December 2023 disturbance. When police arrived on the scene, they identified defendant and arrested him on an outstanding warrant. A search after arrest uncovered methamphetamine. For purposes of defendant's guilty plea, the State amended the single-indicted count of third-degree possession of CDS, N.J.S.A. 2C:35-10(a)(1), to a disorderly-persons offense, wandering/prowling to obtain/sell CDS, N.J.S.A. 2C:33-2.1(b).

A-1722-24

A third indictment, No. 24-06-1033, resulted from another traffic stop that same month based on defendant's operation of a vehicle without activated headlights or taillights. After making the stop, the officer learned defendant did not have a valid driver's license and his car had fictitious license plates. The officer observed defendant emitting "the odor of an alcoholic beverage," coupled with "droopy eyelids" and watery, bloodshot eyes. Defendant failed field sobriety tests and was arrested for driving while intoxicated (DWI), N.J.S.A. 39:4-50. A search of the vehicle produced open cans of beer, methamphetamine, fentanyl, and Citalopram.

Defendant was indicted for two counts of third-degree possession of CDS, N.J.S.A. 2C:35-10(a)(1), and one count of fourth-degree possession of prescription/legend drugs without a prescription, N.J.S.A. 2C:35-10.5(e)(2). Defendant later pleaded guilty to an amended charge of fourth-degree distribution of prescription/legend drugs, N.J.S.A. 2C:35-10.5(a)(2), with the State dismissing the remaining counts. He also pleaded guilty to three of thirteen charged motor vehicle infractions. The remainder of the charges were dismissed.

In July 2024, defendant applied for admission into PTI. In August, the probation department rejected defendant's application. The denial letter stated

3

his rejection was due to: "[t]he nature of the offense, [N.J.S.A.] 2C:34-1(e)(1); [t]he facts of the case, [N.J.S.A.] 2C:43-12(e)(2); [and a] continuing pattern of anti-social behavior[, N.J.S.A.] 2C:43-12(e)(8)."

In September 2024, defendant appealed the denial of his application for admission into PTI. In response, the Ocean County Prosecutor's Office (OCPO) addressed each of the seventeen statutory factors governing PTI admission. See N.J.S.A. 2C:43-12(e). Applying the underlying facts of defendant's three cases, the OCPO identified eight factors weighing against defendant's admission:

> (1) [T]he nature of the offenses: On [c]ase [24-02-0310], [d]efendant is charged with one count of [p]ossession of CDS, [t]hird [d]egree. On [c]ase [24-05-0871] [d]efendant is charged with one count of [p]ossession of CDS, [t]hird [d]egree. On [c]ase [24-06-1033], [d]efendant is charged with two counts of [p]ossession, [t]hird [d]egree, and one count of [p]ossession, [f]ourth [d]egree. On that same case, [d]efendant also is charged with the [m]otor [v]ehicle [t]icket of [d]riving [u]nder the [i]nfluence, and DUI [r]efusal.
>
> (2) [T]he facts of the case: whether in the criminal act itself or in the possible injurious consequences of such behavior: [d]efendant is applying to PTI on [three] separate cases, the charges of which are referenced above. In multiple cases, [d]efendant is charged with CDS related offenses, coupled with motor vehicle infractions, including a [d]riving [u]nder the [i]nfluence ticket in the most recent case.
>
> . . . .

4

(3) Motivation and Age of the Defendant: Defendant is a 34-year-old male who has failed to comply with both New Jersey's Criminal Laws and New Jersey's Motor Vehicle Laws. Defendant obtained multiple charges and arrests after his initial arrest on the first present offense ([24-02-0310]), showing a clear disregard for the law and lack of motivation.

(7) [T]he needs and interests of society: the State and society in this case have an interest in proceeding with the case in the ordinary criminal justice route, as there is a clear need to deter this type of conduct. Defendant continues to disregard the law regarding [CDS], and additionally, puts the public at risk when he continues to disregard the motor vehicle laws. Intoxicated driving affects the community at large. The State, and this county in particular, expend resources combating intoxicated driving because these drivers pose a risk to all law[-]abiding drivers, pedestrians and cyclists on our roads. Society needs to be assured that law enforcement takes this conduct seriously.

(8) The extent to which the applicant's crime constitutes part of a continuing pattern of anti-social behavior: Defendant's crimes clearly constitute a pattern of antisocial behavior. His accruing of multiple arrests and criminal charges, as well as motor vehicle offenses, over a span of months shows a continued disregard for the law and law enforcement. This all demonstrates a continuing pattern of anti-social behavior.

(10) Consideration of whether or not prosecution would exacerbate the social problem that led to the criminal act: This is not a crime of necessity. Prosecution would not exacerbate any social problem related to this [d]efendant.

A-1722-24

(14) Whether or not the crime is of such nature that the value of supervisory treatment would be outweighed by the public need for prosecution: The nature of . . . defendant's actions needs to be deterred. CDS offenses are devastating problems facing our society and specifically the Ocean County area. The need to prosecute the cases related to [d]efendant substantially outweighs supervisory treatment.

(17) [T]he harm done to society by abandoning prosecution would outweigh the benefits of admission: the State submits that harm would be done to society if the State were not able to fully prosecute this case.

The OCPO posited six factors were either neutral or inapplicable:

(4) The desire of the complainant or victim to forego prosecution: The charging [p]olice [d]epartments in [d]efendant's underlying cases do not wish to forego prosecution.

(5) The existence of personal problems and character traits which may be related to the applicant's crime and for which services are unavailable within the criminal justice system, or which may be provided more effectively through supervisory treatment and the probability that the causes of criminal behavior can be controlled by proper treatment: there is no indication to support any underlying cause for the criminal behavior for which services are unavailable within the criminal justice system. Therefore, this factor is inapplicable.

(6) The likelihood that the applicant's crime is related to a condition or situation that would be conducive to change through his participation in supervisory treatment: there is no evidence the crime was related

6

to a condition or situation that would be conducive to change through PTI and therefore this is inapplicable.

(11) Consideration of whether or not prosecution would exacerbate the social problem that led to the applicant's criminal act[:] this factor is inapplicable as there has been no information provided as to any social problems with respect to the [d]efendant.

(15) Whether or not the applicant's involvement with other people in the crime charged or in other crime is such that the interest of the State would be best served by processing his case through traditional criminal justice procedures: This factor is inapplicable.

(16) Whether or not the applicant's participation in pretrial intervention will adversely affect prosecution of co-defendants: This factor is inapplicable.

The OCPO found three factors weighed in favor of defendant's admission:

(9) The applicant's record of criminal and penal violations: Defendant has no prior indictable convictions[;] (12) The history of physical violence towards others: There is no indication that [d]efendant has had history of physical violence towards others[; and] (13) Involvement in organized crime: . . . defendant is not known to be part of an organized crime group.

On October 25, 2024, the court heard oral argument on defendant's appeal. The court issued a denial in an oral decision and order entered the same day. After acknowledging a clerical error in the OCPO's analysis, the court made its findings:

7

In view of what the State has confirmed now was a clerical error with regard to factors [ten] and [eleven], they acknowledge that it was and that the State never considered these offenses to be assaultive in nature and it was never held against . . . defendant.

So, thus the [c]ourt does not feel that a remand would be appropriate with regard to that. In addition, the [c]ourt doesn't find that the State failed to consider factor [seventeen].

With regard to the issue of deportation case law that was cited as . . . the State had also argued those cases do not apply to PTI. This court is not aware of any New Jersey case law that indicates deportation or the possibility of deportation is a factor that must be considered by the State.

So, the [c]ourt will not be remanding the matter for consideration.

. . . .

Here, the [c]ourt cannot find that the defense has met their burden by clear and convincing evidence that the State failed to consider all relevant factors. They did, in fact, address all of the statutory factors.

Again, there was a clerical error with regard to factor[s ten] and [eleven] which was addressed here on the record and the [c]ourt cannot find that the application of the factors were inappropriate or irrelevant and thus the [c]ourt hereby denies the defense appeal of the rejection of PTI.

In January 2025, the court sentenced defendant to two years' probation for the amended counts of Indictment Nos. 24-02-0310 and 24-06-1033 and

imposed mandatory driving privilege suspension and fines for the DWI conviction. The court imposed a concurrent sentence of five days' imprisonment in connection with Indictment No. 24-05-0871, granting four days' jail credit.

Defendant appeals, raising the following argument:

POINT I

THE PROSECUTOR MISTAKENLY WEIGHED SOME PTI FACTORS, DID NOT CONSIDER OTHER APPLICABLE FACTORS, AND HER REJECTION OF [DEFENDANT]'S ADMISSION INTO [PTI] WAS ARBITRARY, AND A PATENT AND GROSS ABUSE OF DISCRETION.

II.

"PTI is a 'diversionary program through which certain offenders are able to avoid criminal prosecution by receiving early rehabilitative services expected to deter future criminal behavior.'" State v. Johnson, 238 N.J. 119, 127 (2019) (quoting State v. Roseman, 221 N.J. 611, 621 (2015)). "[T]he prosecutor's decision to accept or reject a defendant's PTI application is entitled to a great deal of deference." Roseman, 221 N.J. at 624 (citing State v. Leonardis, 73 N.J. 360, 381 (1977)). "[T]o overturn a prosecutor's decision to exclude a defendant from the program, the defendant must 'clearly and convincingly' show that the decision was a 'patent and gross abuse of . . . discretion.'" State v. K.S., 220 N.J. 190, 200 (2015) (quoting State v. Wallace, 146 N.J. 576, 582 (1996)).

9

The scope of our review of a PTI rejection "is severely limited" and "serves to check only the 'most egregious examples of injustice and unfairness.'" State v. Negran, 178 N.J. 73, 82 (2003) (quoting Leonardis, 73 N.J. at 384). However, "[w]hen a reviewing court determines that the 'prosecutor's decision was arbitrary, irrational, or otherwise an abuse of discretion, but not a patent and gross abuse of discretion,' the reviewing court may remand to the prosecutor for further consideration." K.S., 220 N.J. at 200 (quoting State v. Dalglish, 86 N.J. 503, 509 (1981)). Moreover, "[i]ssues concerning the propriety of the prosecutor's consideration of a particular [PTI] factor are akin to 'questions of law'" and must be reviewed de novo. State v. Denman, 449 N.J. Super. 369, 375-76 (App. Div. 2017) (quoting State v. Maddocks, 80 N.J. 98, 104 (1979)).

Defendant argues the OCPO's rejection was not "based on an individualized assessment of [his] features and amenability to rehabilitation." For the first time on appeal, defendant argues the OCPO failed to properly consider factor two, claiming it simply recited the facts of each case rather than provide a meaningful assessment. Specifically, he maintains the OCPO should have examined this factor through the lens of defendant's need for rehabilitation for his "untreated substance use disorder, a recognized mental health condition."

As to factor seventeen, the OCPO wrote, "harm would be done to society if the State were not able to fully prosecute this case." Defendant characterizes this explanation as "conclusory" and asserts the OCPO merely "parrot[ed]" the statutory language.

On examination of the record, we concur that the OCPO's October 2024 treatment of factor seventeen was conclusory. However, the notice of rejection contains a more fulsome explanation of its applicability. Under a recitation of the factor seventeen standard, the notice provided:

> PTI Guideline 1(a) provides that one of the primary purposes of PTI is to "provide defendants with opportunities to avoid ordinary prosecution by receiving early rehabilitative services, when such services can reasonably be expected to deter future criminal behavior by the defendant[."] Although you report no longer using meth and cocaine, you continued to drink alcohol as recently as May 2024.
>
> Since your arrests for all offenses, you have not engaged in any substance abuse treatment services and do not appear to have any desire to engage [in] rehabilitation. You are beyond the scope of PTI, and your enrollment would send a negative message to others who engage in such conduct.

This assessment was implicitly endorsed by the OCPO in its brief in support of the decision to reject defendant's application.

Regarding factor two, "the facts of the case," in addition to a detailed

analysis of each of the three cases, the notice included the following assessment: "Your continued criminal involvement, as well as your apparent disregard for the law and law enforcement, would appear to constitute a pattern of anti-social behavior.  As such, a stricter form of supervision would be more appropriate."

To meet the "patent and gross abuse of discretion" standard, "a party must show that the prosecutor's decision failed to consider all relevant factors, was based on irrelevant or inappropriate factors, or constituted a 'clear error in judgment.'"  State v. Nwobu, 139 N.J. 236, 247 (1995) (quoting State v. Bender, 80 N.J. 84, 93 (1979)).  "Additionally, an abuse of discretion is 'patent and gross' if it is shown 'that the prosecutorial error complained of will clearly subvert the goals underlying [PTI].'"  Ibid. (quoting Bender, 80 N.J. at 93).

However, because "PTI is essentially an extension of the charging decision, . . . the decision to grant or deny PTI is a 'quintessentially prosecutorial function.'"  Roseman, 221 N.J. at 624 (quoting Wallace, 146 N.J. at 582).  "In carrying out this function, prosecutors are guided by a number of different principles.  Primarily, prosecutors are required to consider the seventeen factors listed under N.J.S.A. 2C:43-12(e)."  State v. Lee, 437 N.J. Super. 555, 562 (App. Div. 2014).  "[U]nless and until a defendant demonstrates the contrary, our judges must presume that all relevant factors were considered and weighed prior

12

to a prosecutorial veto." Ibid. (quoting Bender, 80 N.J. at 94). Moreover, the substantial deference afforded to the prosecutor establishes that provided "[t]he prosecutor's analysis in the second letter is sufficiently cogent and grounded in the facts and the applicable PTI standards to be upheld," the decision will be affirmed "even though reasonable minds might differ as to whether defendant is a suitable candidate for admission into the program." Id. at 569.

Having reviewed the record, we are satisfied the OCPO's rejection of defendant's PTI application was based on a sufficient individualized assessment of his characteristics, including his amenability to rehabilitation, and was supported by the facts and applicable standards. Thus, the trial court did not err in upholding defendant's rejection from the program.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division